IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FERNANDO REAL,                          :        CIVIL ACTION NO. **3:CV-13-1054**
                                        :
            Plaintiff                   :        (Judge Brann)
                                        :
            v.                          :        (Magistrate Judge Blewitt)
                                        :
CO HUBER, et al.,                       :
                                        :
            Defendants                  :

## REPORT AND RECOMMENDATION

**I. Background.**

On April 23, 2013, Plaintiff Fernando Real, an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCI-Graterford"), filed the instant civil rights action[1], pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also indicates that he is seeking declaratory relief under 21 U.S.C. §2201 and §2202. Plaintiff raises claims of unlawful seizure and destruction of Plaintiff's property, an Eighth Amendment conditions of confinement claim for exposure to substandard living conditions, First Amendment retaliation, Fourteenth Amendment Due Process, First Amendment denial of access to the courts, Eighth Amendment denial of medical treatment and a state law claim of intentional infliction of emotional distress. (*Id.*). Plaintiff also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 4). On May 8, 2013, the Court granted Plaintiff's Motion for leave to proceed *in forma pauperis*. (Doc. 7).

---

[1]We note that Plaintiff filed an additional civil rights action in the Middle District, namely, *Fernando Real v. Dunkle, et al.*, 11-cv-2071 on November 7, 2011 against employees of SCI-Mahanoy. The case is pending before the Court.

In his pleadings, Plaintiff names the following twenty (20) Defendants: CO Huber, Richard Southers, Michael Bell, John Horner, Lt. Gardner, Sgt. Cook, J.A. Stum, Tracey Williams, Dennis King, Bear, Christopher Chambers, Rodney Carberry, Nurse Mary, Teresa Law, William, McGinnis, Kristen Reisinger, Lieutenant Rhoades, Captain Euhanburaz, Sgt. Boring and Dorina Varner.  (Doc. 1, pp. 2-4).

All Defendants are past and present employees of the Pennsylvania Department of Corrections ("PA-DOC") at SCI-Camp Hill and the DOC's Central Office.  Defendant McGinnis is a Physician's Assistant and is an employee of PHS/Corizon.

Plaintiff alleges that he was subjected to unhealthy conditions of confinement at SCI-Camp Hill in the Special Management Unit ("SMU").  Plaintiff complains of being subjected to strong odors from the toilets and unclean water.  (Doc. 1, pp. 4-8).  Plaintiff complained to staff and filed grievances for which he was ignored.  Plaintiff states:

> 56.  The acts or omissions of Defendants: Chambers, Southers, Varner, Williams, Stum, Bear, Cook and Carberry were committed without cautious regard or due care, and with such wanton and reckless disregard of the consequences or to show cautious indifference to the danger of harm and injury.  The acts and omission of the Defendants constituted willful misconduct.
>
> 57.  As a result Plaintiff is at risk of contracting serious medical problems in the future as a result of the acts and omissions of Defendants Chambers, Southers, Varner, Williams, Stum, Bear, Cook and Carberry, who knowingly exposed Plaintiff to substandard living conditions.

(*Id.*, p. 8).

Plaintiff further asserts that he was denied medical care and retaliated against by SMU staff for filing grievances regarding the prison conditions.  (*Id.*, pp. 9-13).  Plaintiff alleges that Defendant

Reisinger did not give him a fair and impartial hearing on the misconduct charges.   (*Id.*, p. 13).

Finally, Plaintiff alleges that Defendant Huber destroyed some of his legal property resulting in the

loss of a legal case.   (*Id.*, pp. 14-18).   In his Complaint, Plaintiff indicates that he exhausted all

available administrative remedies.[2]   (*Id.*, p. 18).[3]

There are four outstanding motions which are ripe and we will be address in this Report and

Recommendation.   On July 12, 2013, the DOC Defendants filed a Motion to dismiss for failure to

state a claim.   (**DOC. 14**).   On July 12, 2013, the DOC Defendants filed a brief in support of same.

(Doc. 15).   On August 5, 2013, Plaintiff filed a brief in opposition of the DOC Defendants Motion

to dismiss.   (Doc 23).   On the same date, Plaintiff also filed "Plaintiff's Brief In Support Of Motion

In Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint."   (Doc. 24).

On July 12, 2013, Plaintiff filed a Motion for preliminary injunction.   (**DOC. 16**).   On July

12. 2013, Plaintiff filed a brief in support of same.   (Doc. 17).   On July 18, 2013, Defendants filed

a brief in opposition of Plaintiff's Motion for preliminary injunction.   (Doc. 22).

---

[2]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.   *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).   In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.   The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense.   *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[3]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

On July 15, 2013, Defendant McGinnis filed a Motion to dismiss for failure to state a claim. (**DOC. 20**).  On July 15, 2013, Defendant McGinnis filed a brief in support of same.  (Doc. 21). Plaintiff did not file a response to Defendant McGinnis' Motion.[4]   Plaintiff's opposition to Defendants' Motion is past due, thus, the Court will deem Defendants' Motion as unopposed in accordance with Local Rule 7.6.

On September 19, 2013, Plaintiff filed a "Supplement Complaint." (Doc. 25).  On October 24, 2013, the DOC Defendants filed a Motion to dismiss the supplemental complaint. (**DOC. 26**). On October 24, 2013, the DOC Defendants filed a brief in support of same.  (Doc. 27).  Again, Plaintiff did not respond to Defendants' Motion.  Plaintiff's opposition to Defendants' Motion is past due, thus, the Court will deem Defendants' Motion as unopposed in accordance with Local Rule 7.6.

## II.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273,

---

[4]Plaintiff explains in his Doc. 30, Motion to correct the docket entry that he filed opposition to the Correction Defendants Motion and it was mistakenly docketed as opposition to Defendant McGinnis' Motion.

284-85 (2002).[5]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).  It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.") (citing *Rode, supra*.).

### III.  Motion to Dismiss Standard.

In  *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

---

[5]Plaintiff alleges in his pleading that all of the individual Defendants are employees of the PA DOC.  This is sufficient to show that Defendants are state actors.

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of

a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## IV. Discussion.

As Plaintiff correctly indicates in his Complaint, the Court has jurisdiction over his §1983 civil rights action pursuant to 28 U.S.C. §1331 and §1343(a).

### A.    THE DOC DEFENDANTS' MOTION TO DISMISS (DOC. 14).

#### 1.    Personal Involvement of Defendants Southers, Bell, Williams, Law, Horner, Rhoades, Eichenburg[6] and Varner.

Defendants assert that Plaintiff's Complaint should be dismissed as against Southers, Bell, Williams, Law, Horner, Rhoades, Eichenburg and Varner because Plaintiff failed to establish the personal involvement of these Defendants as they all hold supervisory positions in the DOC.   We agree.  It is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009);  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

---

[6]Plaintiff refers to this Defendant as Euhanburaz in the Complaint.  Defendants indicate that the correct spelling of Defendant's name is Eichenburg, thus, we will use the correct spelling throughout the R&R.

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledsoe*, 2010 WL 2911628, *2 (3d Cir.).

The above-listed Defendants are supervisory Defendants.  The allegations set forth by Plaintiff against them are attenuated at best.  Defendant Southers is the former Superintendent.  Plaintiff's sole allegation against Defendant Southers is that he was aware of the odor problem in SMU and was in a position to correct it, but did nothing about it.  (Doc. 1, ¶ ¶ 35, 40, 49-50).  Defendant Bell is the Superintendent's assistant and Plaintiff does not make any specific allegations against Defendant Bell.  Defendant Williams is an Administrative Officer and Defendant Varner is Chief Grievance Officer, again, Plaintiff alleges that they failed to correct the odor issues.  (*Id.*, ¶ ¶ 36, 55-57).  Defendant Law is a Health Care Administrator and does not diagnose or treat patients in the DOC.  Plaintiff's allegations against Defendant Law are limited to Defendant Law denying Plaintiff's request to have his medical conditions documented, diagnosed and treated on March 20, 2012.  (*Id.*, ¶ ¶ 74-76).

8

Plaintiff alleges that Defendant Major Horner knew Defendant Huber threatened to destroy his personal property and was in a position to prevent it. (*Id.*, ¶ 129). Lieutenant Rhoades and Lieutenant Eichenburg are alleged to have placed Plaintiff on mini law library and shower restrictions in retaliation for staff grievances. (*Id.*, ¶ 107). We do not find that Plaintiff has specifically stated the personal involvement of any of the above-listed Defendants with respect to any of his constitutional claims. Thus, we will recommend that these Defendants be dismissed without prejudice. If Plaintiff can state the personal involvement of any of these Defendants, Southers, Bell, Williams, Law, Horner, Rhoades, Eichenburg or Varner regarding his constitutional claims, then an amended pleading as to these Defendants would not be futile. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

### 2.   Claims Against Defendants Law, Southers, Williams and Varner Regarding Plaintiff's Grievance and Grievance Appeals.

Plaintiff alleges that Defendants Law, Southers, Williams and Varner violated his constitutional rights regarding their handling of his grievances and requests. Plaintiff states that these Defendants were made aware of the alleged issues he was experiencing through his grievances, but failed to correct them. Defendants assert that Plaintiff's Complaint should be dismissed as against Law, Southers, Williams and Varner because the denial of grievances and appeals does not amount to a constitutional violation. We agree and find that these Defendants should be dismissed with prejudice.

Simply because Defendants Law, Southers, Williams and Varner denied Plaintiff's administrative remedy requests and his appeals is not sufficient to name these DOC officials as Defendants in this civil rights action. *See White v. Bledsoe*, 2011 WL 2292279, * 6 (M.D. Pa. 6-8-11) ("Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal

involvement.") (citations omitted); *Lyons v. Beard*, 2009 WL 604139, *5("[The Plaintiff inmate's] dissatisfaction with responses to his grievances does not support a constitutional claim.").

The law is well-settled that inmates do not have a constitutional right to a grievance process, and that naming the supervisory Defendants based only on their responses to an inmate's grievance and appeals will subject these Defendants to dismissal. *Bartelli v. Jones*, 231 Fed. Appx. 129, 132 (3d Cir. 2007)("a state grievance procedure does not confer any substantive constitutional right upon prison inmates.")(citation omitted); *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W. D. Pa.); *Jones v. North Carolina Prisoners's Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977).  This  Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as the DOC  does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005)(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.  *See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.)(claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures." (citations omitted)).

10

In light of the well-settled case law, we find that Defendants Law, Southers, Williams and Varner are entitled to dismissal with prejudice from this case.   Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint against Defendants Law, Southers, Williams and Varner with respect to his constitutional claims, and we find that there is futility if Plaintiff is allowed to amend his stated claims.  *See Grayson v. Mayview State Hospital*, 293 F.3d at 111.

### 3.    *Due Process Claim Against Defendant Hearing Examiner Reisinger.*

As Defendants recognize in their brief in support of their Motion to dismiss (Doc. 15, p. 10), the Supreme Court, in *Wolff v. McDonnell,*  418 U.S. 539, 563-67 (1974), identified  the minimum procedural due process rights to be afforded a prisoner accused of misconduct which may result in sanctions, which rights are applicable in the instant case.  The prisoner has (1) the right to appear before an impartial decision making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  *Wolff*, 418 U.S. at 563-67.  As a result of being found guilty of misconduct, Plaintiff received sixty (60) days disciplinary custody time as a result of Misconduct No. B280925, thus Defendants argue that protected liberty interests are not impacted unless the prisons actions impose "an atypical and significant hardship" on the inmate as in *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

11

We find that this Court has considered similar claims and has found that an inmate's placement in similar programs did not implicate an inmate's due process rights.  Based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D. Pa.), and  *Stotts v. Dodrill*, Civ. No. 04-0043, M.D. Pa.,[7] as well as *Meekins v. Beard*, 2007 WL 675358 (M.D. Pa.).  and *Spencer v. Ravana*, 2007 WL 88084 (M.D. Pa.), we find that our Plaintiff's disciplinary custody placement does not implicate his due process rights.

As this Court in *Francis* stated:

> The defendants also argue that Francis' placement in the SMU does not implicate his due process rights.  We agree. A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin,* 545 U.S. 209, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.* at 2394 (quoting *Sandin v. Connor*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

> The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations.  *Sandin*, 515 U.S. at 484.  In *Sandin*, an inmate was charged with violating prison regulations.  *Id.* at 475.  At a hearing, the hearing committee refused the inmate's request to present witnesses.  *Id.*  The committee found the inmate guilty and sentenced him to disciplinary segregation.  *Id.*  The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record.  *Id.* at 476.  Thereafter, the

---

[7] In *Stotts*, this Court found that federal inmates' placement in the SMU following a riot incident did not violate their due process rights, that inmates' placement in the SMU was not punitive in nature, and that inmates were not entitled to the procedural safeguards.

inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation
of procedural due process during the disciplinary hearing. *Id*.
The Tenth Circuit found that he had a protected liberty interest
because it interpreted the prison regulations to require that the
committee find substantial evidence of misconduct before
imposing segregation. *Id*. at 477.  The Supreme Court reversed,
finding no liberty interest. *Id*. at 484.  In doing so, it rejected an
approach that focused on whether the prison regulations "went beyond
issuing mere procedural guidelines and has used 'language of an
unmistakably mandatory character' such that the incursion on
liberty would not occur 'absent specified substantive predicates."'
*Id*. at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72, 103
S.Ct. 864, 74 L.Ed.2d 675 (1983)).  The Court found this approach
undesirable because it created a disincentive for prison
administrators to codify prison management procedures and because
it "led to the involvement of federal courts in the day-to-day
management of prisons, often squandering judicial resources with
little offsetting benefit to anyone." *Id*. at 482.  Thus, the Court held
liberty interests "will be generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected
manner as to give rise to protection by the Due Process Clause of
its own force . . .  nonetheless imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life." *Id*. at 484.  In applying this test, the Court observed,
"[discipline by prison officials in response to a wide range of
misconduct falls within the expected perimeters of the sentence
imposed by a court of law." *Id*. at 485.  The Court then found that
the inmate's disciplinary segregation "did not present a dramatic
departure from the basic conditions of Conner's indeterminate
sentence" because the conditions of disciplinary segregation were
similar to those faced in administrative and protective custody.
*Id*. at 486.

In *Wilkinson v. Austin*, 545 U.S. 209, ___, 125 S.Ct. 2384, 2393,

162 L.Ed.2d 174 (2005), the Court applied the *Sandin* test
and found that the plaintiff's due process rights were implicated
when he was placed in a program where:
almost all human contact is prohibited, even to the point
that conversation is not permitted from cell to cell; the light,
though it may be dimmed, is on for 24 hours; exercise is for 1
hour per day, but only in a small indoor room ... [P]lacement ...

is indefinite and, after an initial 30 day review, is reviewed just annually . . . . [P]lacement disqualifies an otherwise eligible inmate for parole consideration.

*Id*. at 2394-95.

The court found that these harsh conditions "give rise to a liberty interest in their avoidance."

*Id*. at 2395.

*Fraise v. Terhune*, 283 F.2d 506 (3d Cir.2002) applied the *Sandin* test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest. Inmates who the prison deemed members of groups that posed a security threat were placed in the STGMU. *Id*. at 509. "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program." *Id*. at 511. The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. *Id.; see also Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).

We find that the conditions in the [USP-Lewisburg] SMU do not remotely approach the severity of the conditions *Wilkinson* found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as *Sandin, Fraise,* and *Griffin*, which found no protected liberty interest.

*Id.*, pp. *3-*4.

The *Francis* Court concluded that the restrictions in the SMU in federal prison were no greater than the restrictions placed on the inmate in *Griffin*. *Id*. * 5. In our case, Plaintiff's sixty (60) day disciplinary custody time is clearly not a greater restriction than what was placed on the inmates in *Francis*.

14

Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id.* at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id.*

Moreover, this Court in *Francis, supra at* * 2, stated that "A violation of the Due Process Clause involves the following three elements: '1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.'" (citation omitted). The *Francis* Court, as stated, found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id.* * 3. Based on *Griffin* and *Francis*, as well as *Meekins* and *Spencer*, Plaintiff's sentence of sixty (60) day disciplinary custody time, does not give rise to a protected liberty interest. *See Keys v. Commonwealth of Pennsylvania Department of Corrections, et al.*, 3:CV-07-0338, M.D. Pa. Therefore, we will recommend that Plaintiff's Due Process claim against Defendant Reisinger be dismissed. Based upon the above, we find that the Court should not allow Plaintiff to amend his

Complaint against Defendant Reisinger with respect to his Due Process claim, and we find that there is futility if Plaintiff is allowed to amend his stated claims. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111.

### 4.    *Eighth Amendment Claim For Denial Of Medical Care.*

The DOC Defendants have moved for dismissal of Plaintiff's Eighth Amendment deliberate indifference claim. To demonstrate an Eighth Amendment violation, as the Court stated in *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City  Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

In examining Plaintiff's Eighth Amendment denial of medical care claim against Defendants Law, Mary, William, Strum and Varner in light of the aforementioned case law, not only has Plaintiff failed to allege the personal involvement of Defendants with regards to his Eighth Amendment denial of medical care claim, but he has also failed to allege the elements of this claim because Plaintiff does not allege that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff's allegations are vague and Plaintiff does not allege a serious medical need or unnecessary pain, Plaintiff alleges that Defendants ignored his requests for medical care, but fails to allege their specific deliberate

indifference to a serious medical need and their involvement in the alleged Eighth Amendment denial of medical care claim. Specifically, the only two Defendants who could have medically treated him were Defendants Williams and Varner who are prison nurses. Plaintiff does not allege that he had a serious medical condition which they refused to treat. Thus, we recommend that the Eighth Amendment denial of medical care claim against Defendants Law, Strum and Varner be dismissed with prejudice. Furthermore, we will recommend the claims against Mary and Williams be dismissed without prejudice.

### 5.   Conditions Of Confinement In The SMU Claim.

Defendants have moved to dismiss Plaintiff's conditions of confinement claim. Plaintiff complains of the foul odor he smelled in the SMU and the drinking water being discolored and foul smelling. The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 466, stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society. *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).
> To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the

deprivation of a particular basic necessity.  As explained by the
United States Supreme Court:

> Some conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single, identifiable human
> need such as food, warmth, or exercise-for example, a low cell
> temperature at night combined with a failure to issue blankets.
> To say that some prison conditions may interact in this fashion is a
> far cry from saying that all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so amorphous
> as "overall conditions" can rise to the level of cruel and unusual
> punishment when no specific deprivation of single human need
> exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of
> serious harm, the inmate must show that the person or persons
> responsible for the conditions of confinement acted with
> "a sufficiently culpable state of mind." *Id. at 298.*  As described
> by the Supreme Court in *Farmer,* the standard for
> determining deliberate indifference in a conditions of confinement
> case is whether a prison official knew of and disregarded an excessive
> risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The
> Court added that "it is enough that the official acted or failed to
> act despite his knowledge of a substantial risk of harm." *Id.* at 842.

We again find that Plaintiff has failed to sufficiently state the personal involvement

of any Defendant with respect to his Eighth Amendment conditions of confinement claim.

*See Carpenter,* 2011 WL 995967, *6.  In *Carpenter,* the Court stated:

> An Eighth Amendment violation occurs when the prison official is
> deliberately indifferent to inmate health or safety and when this act or
> omission results in the denial of "the minimal civilized measure of life's
> necessities." *See Farmer,* 511 U.S. at 832 (1994). Therefore, a prison official
> can be held liable under the Eighth Amendment for denying humane
> conditions of confinement if he knows that inmates face a substantial risk
> of serious harm and disregards that risk by failing to take reasonable
> measures to abate it. *See id.* at 847, 511 U.S. 825, 114 S.Ct. 1970, 128

L.Ed.2d 811. Claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference." *See Singletary v. Pennsylvania Dept. Of Corrections,* 266 F.3d 186, 193 n. 2 (3d Cir.2001).

Plaintiff does not properly allege that any Defendant was  personally aware that he faced a substantial risk to serious harm to his health by the foul smell or the drinking water he was exposed to in the SMU and that these Defendants disregarded that risk by failing to take reasonable measures to abate the plumbing and ventilation systems.  Thus, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice as against all Defendants.

### 6.    *Intentional Tort Claim*

Defendants assert that to the extent Plaintiff is asserting claims for intentional torts committed against him, they are entitled to dismissal based on Sovereign immunity.  We agree.  Section 2310 of Title I of the Pennsylvania Consolidated States, provides that: "the Commonwealth,  and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." (1 Pa.C.S. §2310).  Thus, we will recommend that to the extent Plaintiff is asserting intentional tort claims for issuing misconducts and seizing his property, the claims should be dismissed with prejudice.

### B.    MOTION FOR PRELIMINARY INJUNCTION (DOC. 16).

Plaintiff's Doc. 16 Motion for preliminary injunction concerns the restrictions of the SMU which only allow him to have one box of legal materials in his cell at one time. Plaintiff has not stated that the lack of a second box has adversely affected the outcome of

his pending legal matters.  Plaintiff is allowed to exchange the box once per month in the SMU and can request more frequent changes.  Thus, Plaintiff has not made any showing that he has suffered irreparable harm or that he will ultimately succeed on the merits of his case and that the extraordinary remedy for an emergency preliminary injunction is warranted. The elements required for the Court to grant a preliminary injunction are outlined by Federal Rule of Civil Procedure 65, as Plaintiff recognizes, which allows for an equitable remedy of preliminary injunction. In order to obtain a preliminary injunction, "the moving party must generally show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo." *A.L.K Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3d Cir.1971).  The Court, when considering whether to grant a preliminary injunction, must also take into account "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 920 (3d Cir.1974). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc., v. Celebrations the Party & Seasonal Superstore, LLC,* 428 F.3d 504, 508 (3d Cir.2005) (citing *Nutrasweet Co. v. Vit-Mar Enterprises,* 176 F.3d 151, 153 (3d Cir.1999). In short, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (3d Cir.1997).

Pursuant to the above discussion, we find that Plaintiff has not met the required elements for the issuance of a preliminary injunction since we find that he will not likely succeed on the merits of his claim regarding the allowance of a second box of legal materials.

### C.   DEFENDANT McGINNIS' MOTION TO DISMISS (DOC. 20).

Defendant McGinnis moves to dismiss Plaintiff's Complaint based on Plaintiff's failure to exhaust administrative remedies.  On the face of his Complaint, Plaintiff states that he exhausted his administrative remedies, however, Plaintiff only discusses the grievances he filed and does not indicate if he took the appropriate appeals from the denial of his grievances.  Additionally, Plaintiff did not file an opposition Brief, thus, as noted, the Court will deem Defendants' Motion as unopposed in accordance with Local Rule 7.6.  A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted."  42 U.S.C. §1997e(a).

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra.*

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies **prior** to filing a civil rights suit.  *See  Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted).  Further, the Defendants have  the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 .  The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

We take judicial notice that SCI-Camp Hill had an administrative remedy policy during the relevant times of this case.  As stated, Plaintiff does not conclusively reference the specifics of

exhaustion beyond the filing of grievances on the face of his instant Complaint that he has exhausted his administrative remedies with respect to his claims. As discussed herein, exhaustion is required.

Additionally, Defendant McGinnis asserts that Plaintiff does not allege personal involvement in the Complaint of Defendant McGinnis and, there are no facts alleged to support how Defendant McGinnis violated the constitutional rights of the Plaintiff. (Doc. 21, pp. 7-8). Thus, the Complaint fails to state any cognizable constitutional claim against Defendant McGinnis. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)("A[n individual government] Defendant in a civil rights action must have personal involvement in the alleged wrongdoing ... .")(quoting *Rode*, 845 F.2d at 1207).

To reiterate, Plaintiff alleges that McGinnis is a physician assistant employed by the DOC. (Doc. 1, ¶ 19). However, Defendant McGinnis is an employee of PHS/Corizon. Plaintiff's sole allegation against Defendant McGinnis is:

> 72. On 2/13/12 and 2/14/12 Plaintiff informed Defendant McGinnis of the medical conditions Plaintiff is experiencing. On both dates Defendant McGinnis refused to record Plaintiff's medical conditions in their entirety. Defendant McGinnis refused to do so once Plaintiff said he was experiencing these conditions as a result of the substandard living conditions on E-Block.

It well-settled in the Third Circuit that personal involvement of each defendant in the alleged constitutional deprivations is a requirement in a civil rights case, and that a complaint must allege such personal involvement. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.*

The Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action.   In *Iqbal*, the Supreme Court stated the following:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

The Court further explained that while a court must accept as true all of the factual allegations contained in a complaint, this requirement does not apply to legal conclusions. Therefore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Twombly*, 550 U.S. at 555; *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 556 n. 3).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

Plaintiff includes Defendant McGinnis in his claims for First Amendment Retaliation and denial of medical treatment.  (Doc. 1, ¶¶ 136, 139).  However, Plaintiff fails to allege that Defendant McGinnis was involved in the grievances that Plaintiff filed or that Defendant McGinnis was aware of the grievances.  Furthermore, Plaintiff does not allege that Plaintiff McGinnis denied him specific medical treatment for a serious medical condition.  Thus, we recommend that the

claims be dismissed without prejudice against Defendant McGinnis be dismissed for lack of personal involvement in the claims.

### D. DOC DEFENDANTS' MOTION TO DISMISS SUPPLEMENTAL COMPLAINT (DOC. 26).

Plaintiff filed a document entitled "Supplement Complaint." (Doc. 25). Plaintiff did not file a Brief in support of his motion to supplement. On October 24, 2013, the DOC Defendants filed a Motion to dismiss Plaintiff's supplemental complaint. (Doc. 26). The DOC Defendants filed a Brief in support of their motion. (Doc. 27). Plaintiff did not file a response. Thus, Plaintiff's supplement complaint (Doc. 25) is deemed withdrawn pursuant to Rule 7.5, M.D. Pa., for failure to file a support brief and failure to submit a complete proposed Amended Complaint. *See Salkeld v. Tennis*, 2007 WL 2682994, * 1 (3d Cir. 2007)(Non-Precedential) (Third Circuit Court found no error with District Court's decision of deeming Plaintiff inmate's motion as withdrawn for failure to comply with M.D. Pa. Local Rule 7.5 requiring the timely filing of a supporting brief).[8]

## V. Recommendation.

Based on the foregoing, it is respectfully recommended that Supervisory Defendants Southers, Bell, Williams, Law, Horner, Rhoades, Eichenburg and Varner be dismissed from all claims without prejudice. (Doc. 14).

---

[8]Plaintiff was provided with a copy of the pertinent Local Rules of this Court. (Doc. 2).

It is further recommended that Defendants Law, Southers, Williams and Varner for the denied Plaintiff's grievances and appeals are entitled to dismissal with prejudice from this case.[9] (Doc. 14)

It is further recommended that Plaintiff's Due Process claim against Defendant Reisinger be dismissed with prejudice.   (Doc. 14)

We recommend that the Eighth Amendment denial of medical care claim against Defendants Law, Strum and Varner be dismissed with prejudice.   Furthermore, we will recommend the claims against Mary and Williams be dismissed without prejudice.(DOC 14)

It is further recommended that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice as against all Defendants. (Doc. 14).

We will further recommend that to the extent Plaintiff is asserting intentional tort claims for issuing misconducts and seizing his property, the claims should be dismissed with prejudice.  (Doc. 14).

Furthermore, pursuant to the above discussion, we will recommend Plaintiff's Motion for a preliminary injunction be **DENIED** since we find that he will not likely succeed on the merits of his claim regarding the allowance of a second box of legal materials.  (**Doc. 16**).

---

[9]Notwithstanding Plaintiff's *pro se* status and our above finding that some of his constitutional claims be dismissed with prejudice as against some  Defendants, we do not recommend that he be permitted leave to file an Amended Complaint regarding any of these claims, since we find that the Plaintiff's detailed allegations fail to state such constitutional violations against these Defendants.  Thus, we find futility of amendment of Plaintiff's stated claims as against the stated Defendants whom we recommend be dismissed with prejudice. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

We further recommend that the claims be dismissed without prejudice against Defendant McGinnis.  (Doc. 20).

Finally, Plaintiff's supplement complaint (Doc. 26) is DEEMED WITHDRAWN pursuant to Rule 7.5, M.D. Pa., for failure to file a support brief and failure to submit a complete proposed Amended Complaint.  (**Doc. 26**).

Finally, it is recommended that this case be recommitted to the undersigned for further proceedings.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 18, 2014**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO REAL, | : | CIVIL ACTION NO. **3:CV-13-1054** |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CO HUBER, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 18, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 18, 2014**